## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DIAMONDS DIRECT, L.C. dba LASHBROOK<br><br>      Plaintiff,<br><br>v.<br><br>MANLY BANDS, et al.<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:23-cv-00870<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Jared C. Bennett |

## <u>INTRODUCTION</u>

This is a case about two wedding ring companies going through a messy divorce. Defendant Manly Bands was once a customer of Plaintiff Diamonds Direct, L.C. dba Lashbrook, but the relationship soured when, according to Lashbrook, Manly Bands began misappropriating its ring designs and product images. Lashbrook filed suit against Manly Bands, its Co-CEOs (Defendants Johnathan Ruggiero and Michelle Luchese), and its President (Defendant Marshall Smith), alleging copyright infringement, among other things. Defendants now ask this Court to dismiss the bulk of Lashbrook's First Amended Complaint (the "Complaint") for failure to state a claim upon which relief can be granted (the "Motion"). For the reasons outlined in this order, the Court will grant Defendants' Motion in part and deny it in part.

## BACKGROUND[1]

Lashbrook and Manly Bands both sell men's wedding rings.[2] Whereas Lashbrook has been in the jewelry business for over two decades, Manly Bands arrived on the scene more recently.[3] For a time, the two businesses had a complimentary relationship, as Manly Bands would source and resell products from Lashbrook.[4] This relationship continued until 2021 when Lashbrook discovered in the course of negotiations between the parties that Manly Bands was manufacturing knockoffs of some of the most popular Lashbrook designs through a third party in China.[5] Lashbrook confronted Manly Bands, suggesting that it was infringing Lashbrook's copyright in the designs.[6] Manly Bands insisted that the designs were not protected by copyright but nonetheless agreed not to use them.[7] Subsequently, however, when Manly Bands started making rings in its own facilities, Lashbrook again observed copycat products in the Manly Bands collection.[8]

Lashbrook became even more concerned when it reviewed the "Custom Ring Builder" tool on the Manly Bands website.[9] The Custom Ring Builder is exactly what it sounds like—it allows customers to design their own rings by starting with a basic product and then incorporating one or

---

[1] The Court draws these facts from the allegations in the Complaint, which, for purposes of the Motion, are assumed to be true to the extent they are well-pleaded. *See Greer v. Moon*, 83 F.4th 1283, 1292 (10th Cir. 2023).
[2] ECF 29 at 9–10.
[3] *Id.*
[4] *Id.* at 10
[5] *Id.*
[6] *Id.*
[7] *Id.* at 10–11.
[8] *Id.* at 11.
[9] The URL for the Custom Ring Builder has been disabled, but the corresponding web application is apparently still available to the public through a Manly Bands server. *See id.* at 11–12.

more design elements—but the product images that guide users' selections do not all originate with Manly Bands.[10] Instead, Manly Bands rips some of the product images directly from Lashbrook's servers and then uses a coding mechanism to obscure Lashbrook's watermark so it can pass those images off as its own.[11] Each time an end user views one of the Lashbrook product images through the Manly Bands website, a copy of that image is transferred to the end user's physical memory cache.[12]

These discoveries prompted Lashbrook to file this lawsuit, in which it asserts claims for copyright infringement, unlawful falsification and removal of copyright management information ("CMI"), unfair competition under the Lanham Act, and various state-law violations.[13] Defendants now seek dismissal of all but one of these claims.[14]

## DISCUSSION & ANALYSIS

Defendants filed their Motion under Rule 12(b)(6), which permits dismissal where the plaintiff's complaint does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In construing a plaintiff's complaint under this rule, the Court must assume the truth of any well-pleaded facts and draw all reasonable inferences in the light most favorable to the plaintiff. *Greer*, 83 F.4th at 1292. Even so, the Court need not accept allegations that are conclusory

---

[10] *See id.* at 11–12. The Complaint mentions three different classes of product images, but because Lashbrook has voluntarily dismissed its claims regarding the images referred to in the Complaint as "Custom Preview Images," *see* ECF No. 38 at 14, the Court's discussion of product images pertains only to the images referred to in the Complaint as "Option Images" and "Base Product Images."

[11] *See* ECF No. 29 at 11–16, 22–28.

[12] *See id.* at 13–15, 21, 80–81.

[13] *See id.* at 32–77, 80–82, 84–92.

[14] While the Motion purports to seek dismissal of all claims, *see* ECF No. 34 at 3, Defendants' counsel clarified at a hearing on the Motion that they are not asking the Court to dismiss Lashbrook's direct infringement claim related to the product images at this time.

or amount to a "formulaic recitation of the elements of a cause of action," *id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and the Complaint must ultimately "state a claim to relief that is plausible on its face," *Greer*, 83 F.4th at 1292 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Assessing whether claims are plausible is a "context-specific task" for which the Court applies "its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and reads the allegations "in the context of the entire complaint," *Greer*, 83 F.4th at 1292 (quoting *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1218 (10th Cir. 2022)).

## I.     <u>Copyright Infringement of the Ring Designs.</u>

The Court will first analyze Lashbrook's copyright infringement claims regarding its ring designs. To establish a claim for copyright infringement, a plaintiff must show "ownership of a valid copyright" and "copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Both these elements are important to the discussion here, so the Court begins by elaborating on these principles and how they apply in the context of a motion to dismiss.

### a.     <u>Copyright Validity.</u>

To qualify for copyright protection, a work "must be original," meaning that it must be independently created and "possess[] more than a *de minimis* quantum of creativity." *Id.* at 345. While the amount of creativity required for copyright protection is low, there are still some works that fall below that threshold, *see id.* at 362, and there are certain types of content for which copyright protection is prohibited as a matter of law. Most notably, copyright law protects "original expression" but not "the ideas embodied in that expression." *Blehm v. Jacobs*, 702 F.3d 1193, 1201 (10th Cir. 2012) (quoting *Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 836 (10th

Cir. 1993)). In other words, where an author's expression and the corresponding idea "cannot be separated, the work cannot be protected by copyright." *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1285 (10th Cir. 1996). This principle "is somewhat elusive," but applying it becomes a more manageable task when one is focused on the overarching purpose of copyright law—that is, "to achieve a proper balance between competition based on public ideas and incentive to produce original work." *Id.* Thus, in analyzing works of authorship, courts attempt to circumscribe the copyright holder's monopoly so that it only extends to "stylistic choices" that are "not dictated by the underlying idea." *Blehm*, 702 F.3d at 1201 (quotations omitted); *see also id.* at 1204 (explaining that the district court did not err in concluding that plaintiff did not have a valid copyright "over the idea of a cartoon figure holding a birthday cake, catching a Frisbee, skateboarding, or engaging in other various everyday activities"). This means that courts will not award copyright protection to aspects such as the "the size, shape and medium" of a work, *Country Kids*, 77 F.3d at 1285, "basic utilitarian functions," *id.*, and "familiar symbols or designs," 37 C.F.R. § 202.1(a).

To be sure, a work composed of basic, unprotectable elements may, as a whole, be worthy of copyright protection, *see Feist*, 499 U.S. at 348 (explaining that, while facts are not protected by copyright, a compilation of facts may warrant protection if it reflects "choices as to selection and arrangement" that "entail a minimal degree of creativity"); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 110 (2d Cir. 2001) (holding that defendant failed to rebut the presumption that plaintiff's registered copyrights in jewelry designs were valid because the designs involved creative choices in the recasting and arrangement of basic jewelry elements), but simply combining a few "commonplace" elements is not enough, *Satava v. Lowry*, 323 F.3d 805, 811-12 (9th Cir.

2003) (holding that plaintiff's "selection of the clear glass, oblong shroud, bright colors, proportion, vertical orientation, and stereotyped jellyfish form [for his sculptures], considered together, lack[ed] the quantum of originality needed"). Instead, copyright protection will only be warranted "if those [unprotectable] elements are numerous enough and their selection and arrangement original enough." *Id.*

Where the U.S. Copyright Office has rejected an application to register a work, a court is not required to defer to that decision in an infringement action regarding that work. *See OddzOn Prods. v. Oman*, 924 F.2d 346, 348 (D.C. Cir. 1991) (citing *Atari Games Corp. v. Oman*, 888 F.2d 878, 886–87, 889 (D.C. Cir. 1989) (Silberman, J., concurring) for the proposition that a court "is not obliged to defer to an agency's action or interpretation" in a copyright infringement action). Even so, the conclusions of the Copyright Office may be helpful in assessing copyrightability. *See Garcia v. Google, Inc.*, 786 F.3d 733, 741–42 (9th Cir. 2015) (en banc) (crediting the Copyright Office's determination that plaintiff's short appearance in a film was not copyrightable).

b. Copying of Original Elements.

Once a plaintiff has established ownership of a valid copyright, it must next show that the defendant copied "constituent elements of the work that are original." *Feist*, 499 U.S. at 361. This portion of the analysis has two steps. Initially, the plaintiff must establish that the defendant copied the work at issue "as a factual matter." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1138 (10th Cir. 2016) (quoting *Blehm*, 702 F.3d at 1199). Defendants have not raised any dispute as to factual copying, so the Court's analysis of any alleged copying here will turn on the second step, at which "a plaintiff must demonstrate substantial similarity between the allegedly infringing work and the

6

elements of the copyrighted work that are legally protected." *Id.* (internal quotation marks omitted).

In assessing substantial similarity, the Court employs the "abstraction-filtration-comparison" test by (1) separating the ideas underlying the work from the particular expression, (2) filtering out the unprotectable elements of the work, and then (3) comparing the protectable elements to the allegedly infringing work to see "whether the defendants have misappropriated substantial elements" of the plaintiff's work. *Gates Rubber*, 9 F.3d at 834. At the final step of this analysis, the Court determines "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Blehm*, 702 F.3d at 1202 (quoting *Country Kids*, 77 F.3d at 1288). Thus, if the similarities between the plaintiff's work and the allegedly infringing work only involve unprotectable elements, then there is no infringement. *See Blehm*, 702 F.3d at 1204 (concluding that plaintiff did not have a successful infringement claim because the similarities between his cartoon figures and defendants' only involved unprotectable common elements (e.g., arms, legs, faces, etc.) and "poses attributable to an associated activity"); *Country Kids*, 77 F.3d at 1285-87 (concluding that plaintiff did not have an infringement claim because its dolls were only similar to defendant's in their size, shape, and medium—attributes inherent in an unprotected idea).

c. Procedural Considerations.

Before analyzing Lashbrook's copyright claims for the ring designs, the Court must make some observations about how the procedural posture of this case affects its analysis. Copyrightability and substantial similarity are both mixed questions of law and fact. *Zahourek Sys.*

*v. Balanced Body Univ., LLC*, 965 F.3d 1141, 1143 (10th Cir. 2020); *Blehm*, 702 F.3d at 1199. As such, these issues may involve "potential jury questions in the presence of materially disputed facts," *Zahourek*, 965 F.3d at 1143 (quoting *Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258, 1262 n.4 (10th Cir. 2008)), but that is not always the case.

As the Tenth Circuit has explained, when, as here, the works at issue in a copyright case have been presented to the Court, "the legal effect of the works [is] determined by the works themselves rather than allegations in the complaint." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941–42 (10th Cir. 2002). This means that even where a plaintiff alleges that its work is copyrightable and that the defendant's work is substantially similar, a court may not need to defer to those allegations at the motion-to-dismiss stage if it can review the works. *See id.* at 941-48 (assessing whether defendant appropriated protected expression, as opposed to unprotected facts, from plaintiff's book in reviewing a district court's grant of a motion to dismiss); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (holding that a district court did not err in granting defendants' motion to dismiss because it was permitted to rule on substantial similarity at the pleading stage by visually comparing the works at issue, which were incorporated into plaintiff's complaint).

Of course, there may be some circumstances where it is inappropriate to assess copyrightability or substantial similarity in this posture, *see, e.g.*, *Peter F. Gaito*, 602 F.3d at 64 ("[T]here can be certain instances of alleged copyright infringement where the question of substantial similarity cannot be addressed without the aid of discovery or expert testimony."); *Tracy Anderson Mind & Body, LLC v. Roup*, No. CV 22-4735-RSWL-Ex, 2022 WL 17670418, at *1, 3 (C.D. Cal. Dec. 12, 2022) (concluding that it was inappropriate at the motion-to-dismiss stage

to consider whether plaintiffs' "choreography-based" fitness regimen was copyrightable because answering the question would have involved a "detailed factual analysis" (internal quotation marks omitted)), but where the ruling merely involves the application of established legal principles, there is no reason for the reviewing court to kick the can to a later stage of the litigation, *see Peter F. Gaito*, 602 F.3d at 67–69 (concluding that architectural plans were not substantially similar because their similarities comprised unprotectable ideas as opposed to protectable expression); *ITN Flix, LLC v. Univision Holdings, Inc.*, No. 2:15-cv-00736-DN, 2016 WL 6496224, at *4–5 (D. Utah Nov. 2, 2016) (concluding at the pleading stage that plaintiffs had not established copying of protectable material because the films at issue merely shared "general plot ideas" and "elements that are standard, stock, or common" (internal quotation marks omitted)). As the analysis below demonstrates, the Court is well positioned, even at this early stage, to make findings as to copyrightability and substantial similarity for the ring designs presented in the Complaint because well-known tenets of copyright law are all the Court needs to assess the designs.

d.   The Ring Designs.

Applying the principles discussed above, the Court concludes that Lashbrook's infringement claims regarding its ring designs should be dismissed because (1) most of the designs are not entitled to copyright protection and (2) even where the designs are entitled to copyright protection, the corresponding Manly Bands designs are not substantially similar.

i. *Most of the designs are not entitled to copyright protection.*



Lashbrook alleges that Manly Bands has infringed the ring designs pictured above. The Copyright Office found that each of these designs was insufficiently creative to qualify for registration. Although these conclusions are not dispositive, the Court finds them persuasive. *See Garcia*, 786 F.3d at 741–42. Each of these designs reflects a combination of a few different materials, but choices as to medium are not protectable. *See Country Kids*, 77 F.3d at 1285. Many of the designs have a contrasting inlay or inner band, but such basic shapes are not protectable

either. *See id.*; 37 C.F.R. § 202.1. Likewise, common elements such as the beveling, coloring, raised outer band, and hammered texture featured in some designs are not protectable. *See* 37 C.F.R. § 202.1; *see also* ITN Flix, 2016 WL 6496224, at *4–5. Once these various unprotectable elements are stripped away, there is nothing left of these designs.

Lashbrook contends—correctly—that designs made up of unprotectable elements may be copyrightable, but that is only the case where the elements are sufficiently "numerous" and creatively arranged. *See Satava*, 323 F.3d at 811-12. The designs pictured above do not meet this threshold. Instead, these designs are more like the sculptures at issue in *Satava*—they are simple works made from basic combinations of a few commonplace elements. *See id.* Indeed, if these designs were copyrightable, it is hard to image how anyone other than Lashbrook could, for example, make a wedding ring with a titanium exterior and an inner band made of hardwood. When an idea and an expression merge in this manner, copyright protection does not attach. *See Country Kids*, 77 F.3d at 1285. Thus, in the interest of preserving the competitive balance that copyright law seeks to achieve, *see id.*, the Court grants Defendants' Motion as to the above-pictured designs.

    ii.   *There is no substantial similarity between Lashbrook's protectable designs and the allegedly infringing designs.*

Each of the remaining designs underlying Lashbrook's claims is presented below to the left of its allegedly infringing counterpart. For the sake of argument, the Court will assume without deciding that each of these Lashbrook designs is subject to a valid copyright registration and proceed directly to the question of substantial similarity.[15]

---

[15] The Copyright Office granted registration for all but one of these designs, though some of the registrations are not presumptively valid because they came more than five years after the first

 

The first of these designs is, at an abstract level, a steel and silver ring with woodgrain etching and a thin inlay, set slightly off center, with a contrasting color and a smooth texture. While these basic concepts are not protectable and may be filtered out of the analysis, the specific expression of the woodgrain etching reflects stylistic choices that may be copyrightable. *See Blehm*, 702 F.3d at 1201; *Gates Rubber*, 9 F.3d at 834. Even so, no reasonable person would conclude that Manly Bands appropriated this expression, as the woodgrain striations in the Manly Bands design are wider, more spaced, higher contrast, and oriented differently from those in the Lashbrook design. Accordingly, Lashbrook has failed to establish substantial similarity between these two designs. *See Blehm*, 702 F.3d at 1202.

 

At the abstraction level, this next Lashbrook design is a cobalt ring with an inner band made of hardwood and an engraved silhouette of a coniferous tree line. Filtering these ideas out,

---

publication of the underlying work. *See* 17 U.S.C. § 410(c). The Copyright Office declined to register the design featuring the American flag motif, but this decision may have been erroneous because that design appears to reflect some creative choices, as discussed further below. In any event, the Court does not need to analyze copyright validity for these designs because even if they were validly copyrighted, the corresponding claims would still fall short at the substantial-similarity step.

what remains is the specific expression of the tree line, which reflects protectable creative choices. *See Blehm*, 702 F.3d at 1201; *Gates Rubber*, 9 F.3d at 834. A reasonable observer would not conclude that Manly Bands took protectable material from this design because the Manly Bands design reflects differing expressions as to the height, density, shape, and branch structure of the trees. Thus, there is no substantial similarity between the designs. *See Blehm*, 702 F.3d at 1202.

 

Next, we have a steel ring with woodgrain etching and a cerakote interior band in a contrasting color. When these ideas and general concepts are filtered from the equation, we are left with the specific expression of the woodgrain etching. The Lashbrook and Manly Bands designs at issue here have some notable similarities. Specifically, both designs feature a prominent ovular grain pattern near the center of the outer band with emanating concentric striations. Even so, this type of pattern is an inherent feature in woodgrain and, therefore, not protectable. *See Blehm*, 702 F.3d at 1201. Thus, Lashbrook's expression of the woodgrain pattern should, at most, have a thin copyright that protects only against the closest approximations. *See id.* at 1202; *Country Kids*, 77 F.3d at 1285–87. With this principle in mind, a reasonable person would not see Lashbrook's protectable expression in the Manly Bands design, as there are key differences in the shape and orientation of the grains in the two designs. Therefore, these two designs are not substantially similar. *See Blehm*, 702 F.3d at 1202.

 

In the abstract, Lashbrook's next design is a titanium ring with an engraved mountain range design against a black backdrop. Filtering out these general concepts leaves the specific expression of the mountain range design for comparison to the allegedly infringing ring. Upon review, no reasonable observer would say that Manly Bands appropriated Lashbrook's expression because the Manly Bands iteration has less contrast, more sloped mountainsides, and sharper peaks in a more rugged arrangement. Thus, there is no substantial similarity between these two designs. *See id.*

 

At an abstract level, this next Lashbrook design is a cobalt ring with a wide meteorite inlay outlined in black. Filtering out these basic elements, the only remaining characteristic in the design is the finishing pattern on the inlay. Even assuming this pattern is the result of creative decision making and not dictated by Lashbrook's choice of material,[16] the finish in the corresponding Manly Bands design is quite different in its markings, coloring, and overall orientation. Thus, no

---

[16] Based on some of the other designs featuring meteorite, the patterning may simply be dictated by Lashbrook's choice to use that medium, which is not copyrightable. *See Blehm*, 702 F.3d at 1201, 1204; *Country Kids*, 77 F.3d at 1285.

reasonable person would see the Manly Bands design as an appropriation of protectable elements of the Lashbrook design, and there is, therefore, no substantial similarity between the two designs. *See Blehm*, 702 F.3d at 1202.

 

In the abstract, the next Lashbrook design is a black zirconium ring with a wide meteorite inlay. Filtering out these general concepts, we are again left with the finishing on the inlay as the lone element that could be protectable.[17] No reasonable person would observe Lashbrook's expression in the corresponding Manly Bands design, as the markings in the Manly Bands design are more sparse and more pronounced than those in the Lashbrook design. Thus, these two designs are not substantially similar. *See Blehm*, 702 F.3d at 1202.

 

Finally, we arrive at the final Lashbrook design, which is a black zirconium ring with engraving on the outer band depicting a waving American flag. This general concept, including the use of simple shapes like stars and stripes, is not protectable and may be filtered out of the

---

[17] Again, the Court assumes for the sake of argument that this patterning is the product of creativity, but it may well be the unprotectable result of Lashbrook's choice of medium. *See Blehm*, 702 F.3d at 1201, 1204; *Country Kids*, 77 F.3d at 1285.

analysis. *See* 37 C.F.R. § 202.1; *Gates Rubber*, 9 F.3d at 834. Nevertheless, there may be some creativity in Lashbrook's particular expression of the flag motif, e.g., stylistic choices as to the contour and placement of the stars and stripes. *See Feist*, 499 U.S. at 346; *Blehm*, 702 F.3d at 1201. In any event, a reasonable observer would not determine that Manly Bands appropriated these elements, as the Manly Bands design depicts the flag in a gentler undulating pattern than the Lashbrook design, in which the stripes are cut off at intervals to evoke stronger breeze. Accordingly, there is no substantial similarity between these two designs. *See Blehm*, 702 F.3d at 1202.

Thus, for the reasons laid out above, the Court will grant Defendants' Motion as to Lashbrook's copyright infringement claims regarding the ring designs.

## II.    Vicarious and Contributory Liability.

Lashbrook asserts copyright infringement claims regarding the product images as well, contending that Manly Bands is subject to direct, vicarious, and contributory liability. Though Defendants are not asking the Court to dismiss the direct infringement claim, they argue that Lashbrook has failed to state claims for vicarious and contributory liability.

The theories of contributory liability and vicarious liability present two distinct ways in which a defendant may be held responsible for a third party's copyright infringement. *See Greer*, 83 F.4th at 1287. "[C]ontributory liability attaches when the defendant causes or materially contributes to another's infringing activities and knows of the infringement." *Id.* (quoting *Diversey v. Schmidly*, 738 F.3d 1196, 1204 (10th Cir. 2013)). Thus, to establish a claim for contributory infringement, a plaintiff must show that (1) a third party committed direct infringement, (2) the defendant knew of the direct infringement, and (3) the defendant caused or materially contributed

to the direct infringement. *Id.* Vicarious liability, on the other hand, applies when the defendant "has an obvious and direct financial interest in the exploitation of copyrighted materials and the right and ability to supervise the direct infringer." *Id.* (internal quotation marks omitted). Notably, when a third party views infringing material online, that action may be a predicate infringement for purposes of contributory and vicarious liability. *See Intell. Rsrv., Inc. v. Utah Lighthouse, Inc.*, 75 F. Supp. 2d 1290, 1294 (D. Utah 1999) ("When a person browses a website, and by so doing displays [infringing material], a copy of the [infringing material] is made in the computer's random access memory (RAM), to permit viewing of the material. And in making a copy, even a temporary one, the person who browsed infringes the copyright.").

Here, Defendants contend that Lashbrook has failed to plead any direct predicate infringement to support its claims for contributory and vicarious liability. The Complaint may not detail any specific third-party infringement, but it contains allegations that infringing copies of certain product images were made each time a consumer accessed the Custom Ring Builder. Thus, unless Defendants intend to assert that *no* consumer has *ever* accessed the Custom Ring Builder, Lashbrook has plausibly alleged a third-party infringement to support a finding of contributory and vicarious liability. *See Greer*, 83 F.4th at 1292; *Intell. Rsrv., Inc.*, 75 F. Supp. 2d at 1294.

Turning to the other elements of contributory liability, the Complaint contains allegations that Manly Bands knew that infringing copies of the product images were made each time a consumer used the Custom Ring Builder, and that Manly Bands contributed to those infringements by making the product images available on its website. Thus, Lashbrook has pleaded each element of a contributory liability claim. *See Greer*, 83 F.4th at 1287.

As to vicarious liability, Lashbrook has also alleged that Manly Bands had the right to supervise consumers' infringements and profited from them through sales and market exposure. Therefore, Lashbrook has pleaded each element of a vicarious liability claim as well. *See id.* Based on these findings, the Court will deny Defendants' Motion as to the contributory and vicarious liability claims.

### III.   Falsification and Removal of CMI.

The Court now turns to Lashbrook's claims for falsification and removal of CMI. The Copyright Act's definition of CMI encompasses various types of information that may be presented in connection with a copyrighted work, such as "[t]he name of, and other identifying information about, the copyright owner of the work." 17 U.S.C. § 1202(c). Under 17 U.S.C. § 1202(a), it is unlawful to knowingly provide or distribute false CMI "with the intent to induce, enable, facilitate, or conceal infringement." 17 U.S.C. § 1202(a). Similarly, § 1202(b) makes it unlawful to "intentionally remove or alter any [CMI]" without the copyright owner's consent or distribute a copyrighted work "knowing that [CMI] has been removed or altered without the authority of the copyright owner," in either case, "knowing . . . or having reasonable grounds to know" that such action "will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b).

In *Mango v. Buzzfeed*, the Second Circuit interpreted § 1202(b) and held that, while a plaintiff proceeding under that statute must show that the CMI violation "will" induce, enable, facilitate, or conceal an infringement, the plaintiff may fulfill that requirement by pointing to the defendant's own infringement and does not need to identify a "downstream infringement" by a third party. 970 F.3d 167, 172 (2d Cir. 2020). For its part, the Ninth Circuit held in *Stevens v. CoreLogic, Inc.* that, because § 1202(b) uses the term "will," a plaintiff must affirmatively

demonstrate that the defendant "had reasonable grounds to be aware of the probable future impact of its actions," i.e., that its conduct would facilitate "identifiable infringements." 899 F.3d 666, 674 (9th Cir. 2018); *see also Victor Elias Photography, LLC v. ICE Portal, Inc.*, 43 F.4th 1313, 1319–20, (11th Cir. 2022) (following *Stevens*). The Court is not aware of any controlling authority from the Tenth Circuit or the Supreme Court addressing this issue.

Here, Defendants do not dispute that Manly Bands, without Lashbrook's consent, intentionally removed CMI from the product images and, knowing that Lashbrook's CMI had been removed, distributed the images alongside its own CMI. Thus, the only outstanding issue for the CMI claims is whether Lashbrook has properly alleged the remaining intent and knowledge requirements of § 1202(a) and (b).

As to § 1202(a), the Complaint is sufficient because it contains allegations that Manly Bands knowingly used its CMI alongside the product images with the intent to conceal its infringement of the images. *See* 17 U.S.C. § 1202(a). Defendants contend that Lashbrook has not stated a § 1202(a) claim because it has not alleged a connection to any third-party infringement, but nothing in the statutory language indicates that a predicate third-party infringement is required. *See id.* Moreover, Manly Bands' argument mischaracterizes Lashbrook's allegations, which, when read in the context of the entire Complaint, *see Greer*, 83 F.4th at 1292, state that Manly Bands intentionally distributed product images with false CMI to third parties (i.e., its customers), who then made infringing copies of those images by viewing them on the Manly Bands website. Accordingly, the Court will deny Defendants' Motion as to Lashbrook's § 1202(a) claim.

Defendants likewise argue that the § 1202(b) claim fails because Lashbrook has not connected the removal of its CMI to a subsequent third-party infringement. Again, this argument

mischaracterizes the Complaint, which, taken as a whole, alleges that Manly Bands willfully distributed altered product images to its customers through its website and thereby induced third-party infringements. Furthermore, even accepting Manly Bands' characterization of the Complaint, Lashbrook has satisfied § 1202(b)'s knowledge requirements by alleging that Manly Bands purposely removed Lashbrook's CMI and distributed altered product images with the intent to conceal *its own* infringement. As the *Mango* court explained, this interpretation of § 1202(b) comports with the statutory language, which "is not limited by actor (*i.e.*, to third parties) or by time (*i.e.*, to future conduct)." 970 F.3d at 172. Indeed, "[a]lthough the word 'will' indicates future action, in the context of Section 1202(b), it is used in conjunction with the words 'induce, enable, facilitate, or conceal,' not 'an infringement.' So the statutory language requires constructive knowledge of future *concealment*, not future infringement." *Id.* (citation omitted). Certainly, a subsequent third-party infringement is one type of infringement that may support a § 1202(b) claim, but as *Mango* demonstrates, it is not the only type. *See id.*

In addition, contrary to Defendants' arguments, *Stevens* does not demand a different result. As an initial matter, nowhere in *Stevens* did the Ninth Circuit say that a third party must commit the predicate infringement for a § 1202(b) claim. Moreover, while the *Stevens* approach seems to require knowledge with respect to a future infringement, the Complaint meets this requirement, as Lashbrook alleges that Manly Bands removed CMI for the purpose of concealing its infringing conduct, which included displaying the product images on its website *after* the CMI was removed.

899 F.3d at 674.[18] Thus, Lashbrook properly alleged knowledge under § 1202(b) and the Court will therefore deny Defendants' Motion as to this claim.

**IV.   <u>Utah Unfair Competition.</u>**

Next, the Court will examine Lashbrook's claim under Utah Code § 13-5a-103, which establishes a "private cause of action against a person who engages in unfair competition." Utah Code § 13-5a-103(1)(a). Under this statute, an alleged act of unfair competition must fall into one of the following categories: "(A) malicious cyber activity; (B) infringement of a patent, trademark, or trade name; (C) a software license violation; or (D) predatory hiring practices." Utah Code § 13-5a-102(4)(a).

Here, Lashbrook places its claim in the category of "malicious cyber activity," which includes, among other things, "accessing a computer without authorization or exceeding authorized access" and "willfully communicating, delivering, or causing the transmission of a program, information, code, or command without authorization or exceeding authorized access." *Id.* Lashbrook claims that Manly Bands unlawfully accessed the Lashbrook website—or, at the very least, exceeded its authorized access—when it made and distributed altered copies of the product images. Even so, the product images were publicly available, so copying the images did not require Manly Bands to go beyond its authorized access.

---

[18] The Court also notes that *Stevens* is factually distinguishable. Whereas Manly Bands has been accused of removing CMI in addition to directly infringing Lashbrook's copyright in the product images, the defendant in *Stevens* was not accused of direct infringement and appears to have been a licensee of the photographs at issue. *See* 899 F.3d at 670–71. Thus, the only possible basis for a § 1202(b) claim in *Stevens* was an infringement by a third party. As explained above, that is not the case here.

Moreover, the Court is not convinced that Utah's unfair competition statute was intended to penalize the conduct alleged here. Simply put, Lashbrook's claim under this statute arises from alleged copyright infringement, but the statute does not list copyright infringement as a possible basis for a claim, even though patent and trademark infringement are listed. *See* Utah Code § 13-5a-102(4)(a). In the Court's view, the Utah legislature's decision to remain silent on copyright infringement while specifically enumerating some other forms of intellectual property infringement indicates that acts of copyright infringement are beyond the reach of the statute. Accordingly, Defendants' Motion is granted as to Lashbrook's Utah unfair competition claim.

## V.        Lanham Act § 43(a).

Lashbrook has also raised a claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), asserting that Manly Bands engaged in unfair competition through its use of the product images. A § 43(a) claim requires a showing that (1) the trademark or trade dress at issue is inherently distinctive or has secondary meaning in the public's mind; (2) the defendant's actions are likely to generate confusion among consumers; and (3) the trademark or trade dress is not functional. *Forney Indus. v. Daco of Mo., Inc.*, 835 F.3d 1238, 1244 (10th Cir. 2016); *see also* 15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement . . . for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional."); *Forney*, 835 F.3d at 1244 n.1 (explaining that the analysis under § 43(a) is the same for both trademarks and trade dress).

Here, Lashbrook has not alleged that the product images are non-functional. Thus, Lashbrook has not pleaded each required element under § 43(a), and the Court will therefore grant

Defendants' Motion as to the Lanham Act claim. *See* 15 U.S.C. § 1125(a)(3); *Forney*, 835 F.3d at 1238.

**VI.**  **Utah Pattern of Unlawful Activities.**

The Court now turns to Lashbrook's claim under Utah Code § 76-10-1603, which provides that a person who receives proceeds as a result of a "pattern of unlawful activity" may not "use or invest" those proceeds "in the acquisition of any interest in, or the establishment or operation of, any enterprise." Utah Code § 76-10-1603(1). For purposes of this statute "unlawful activity" is limited to conduct that would constitute one of several enumerated criminal offenses, such as "computer crimes" under Utah Code § 76-6-703, regardless of whether that conduct is the subject of a charge or indictment. Utah Code § 76-10-1602(4).

Here, Lashbrook asserts that Manly Bands has engaged in a pattern of unlawful activity because its alteration, appropriation, and use of the product images violates Utah Code § 76-6-703, which prohibits "unlawful computer technology access," including committing unauthorized action after accessing a computer where the result is the "copying" or "transmission" of "computer technology." Utah Code § 76-6-703(2). While this statute may appear to cover Manly Bands' alleged conduct (after all, the Complaint details how Manly Bands accessed Lashbrook's servers and, without authorization, copied and transmitted its product images), recognizing Lashbrook's claim would extend the law beyond its intended reach. As indicated above, a pattern of unlawful activity must be a pattern of *criminal* activity, *see* Utah Code § 76-10-1602(4), and Lashbrook has not cited any authority suggesting that it is a criminal offense under Utah law to reproduce, alter, and use copyrighted images from a publicly accessible website. Accordingly, the Court will grant Defendants' Motion as to Lashbrook's claim under Utah Code § 76-10-1603.

## VII.  **Civil Conspiracy.**

Finally, Lashbrook asserts that Manly Bands, Ruggiero, Luchese, and Smith conspired with one another to engage in the various unlawful acts alleged in the Complaint. To establish a civil conspiracy claim under Utah law, a plaintiff must show "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987). Utah courts have recognized, however, that "it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself." *Tomlinson v. NCR Corp.*, 296 P.3d 760, 768 (Utah Ct. App. 2013), *rev'd on other grounds*, 345 P.3d 523 (Utah 2014) (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000)). This principle is sometimes referred to as the "intracorporate conspiracy doctrine." *See, e.g.*, *Hatfield v. Cottages on 78th Cmty. Ass'n*, No. 21-4035, 2022 WL 2452379, at *5 (10th Cir. July 6, 2022) (internal quotation marks omitted).

Here, Lashbrook's civil conspiracy claim is barred because Manly Bands, as a business entity, cannot conspire with its own Co-CEOs (Ruggiero and Luchese) and President (Smith). *See Tomlinson*, 296 P.3d at 768. Lashbrook urges the Court to apply an exception to this rule for situations where a business's agents act outside the scope of the entity's lawful purposes, but this exception would swallow the rule, as a civil conspiracy—by definition—involves at least one unlawful act. *See Israel Pagan Estate*, 746 P.2d at 790. Accordingly, the Court will grant Defendants' Motion as to Lashbrook's civil conspiracy claim.

## CONCLUSION & ORDER

For the reasons discussed above, Defendants' Motion (ECF No. 34) is GRANTED as to Counts 1 through 23 and Counts 30 through 33 of the Complaint (ECF No. 29) and DENIED as to Counts 24, 26, 28, and 29 of the Complaint. Because the Court is dismissing Count 33, the Clerk of Court is directed to terminate Ruggiero, Luchese, and Smith as parties. Lashbrook and Manly Bands are directed confer and file either a proposed scheduling order or a motion for a scheduling conference within 35 days of this order.

DATED this 18th day of November 2024.

BY THE COURT:

Ann Marie McIff Allen
United States District Judge